Sarah E. Marinho, SBN 293690
Dmitry Stadlin, SBN 302361
**STADLIN MARINHO LLP**
111 N. Market St., Suite 300
San Jose, CA 95113
T: (408) 645-7801
F: (408) 645-7802
E: sm@stadlinmarinho.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(San Jose Division)

| | |
|---|---|
| DERRICK SANDERLIN, CAYLA SANDERLIN, BREANNA CONTRERAS, PIETRO DI DONATO, SHANTE THOMAS, ADIRA SHARKEY, and JOSEPH STUKES, individually,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN JOSE, EDGARDO GARCIA, JASON DWYER, CHRISTOPHER SCIBA, JONATHAN BYERS, JARED YUEN, and DOES 1-100, in their individual and official capacities, Jointly and Severally,<br><br>Defendants. | Case No. 20-cv-04824<br><br>COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, DAMAGES AND INJUNCTIVE RELIEF<br><br>JURY TRIAL DEMANDED |

**NATURE OF THE ACTION**

1.     Beginning May 29, 2020, following the graphic police murder of George Floyd, who was recorded on video reciting the all too familiar and tragic plea "I can't breathe" while a white police officer kneeled on his neck, Bay Area residents took to the streets of San Jose to protest this injustice and grieve the police murders of other Black and Brown people, including Breanna Taylor, Ahmaud Arbury, and Tony McDade.

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824

1

2.      Defendant City of San Jose's Police Department ("SJPD") used violent crowd control tactics against these peaceful demonstrators. Over the course of several days, SJPD deployed constitutionally unlawful crowd control tactics including kettling, indiscriminately launching tear gas and flashbangs into crowds and at individuals, and shooting projectiles at demonstrators, including Plaintiffs.

3.      SJPD unjustifiably declared peaceful protests "unlawful assemblies" to excuse their violent tactics.

4.      SJPD knowingly placed these demonstrators in physical danger through indiscriminate use of excessive force.

5.      SJPD also knowingly created a danger to public health by forcing demonstrators to break social distancing rules that are currently in place due to the COVID-19 pandemic.

6.      SJPD's actions, moreover, were caused by SJPD policy and procedures and/or caused by the omission of needed SJPD policy and procedures.

7.      SJPD's actions were further caused by failure to train officers on constitutionally adequate crowd control techniques and reasonable use of force.

8.      The conduct of the officers, including excessive use of force on nonviolent protestors, was ratified by those in command including Police Chief Edgardo "Eddie" Garcia and Captain Jason Dwyer, who are final decision makers with the SJPD.

9.      Plaintiffs file this Complaint against the City of San Jose, Police Chief Garcia, Captain Dwyer, Sergeant Christopher Sciba, Sergeant Jonathan Byers, Officer Jared Yuen, and DOES 1-100, hereinafter Defendants, because on May 29, 2020 through June 2, 2020, Defendants, in one way or another were actually and legally responsible for, whether singularly, or in combination thereof, excessive use of force, failure to protect, failure to intervene, and violation of Plaintiffs' First Amendment right to peacefully assemble and protest.

//

//

//

//

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824

2

1

**JURISDICTION**

2

10.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth,

3

and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded upon 28

4

U.S.C. §§ 1331 and 1343, and the aforementioned statutory and constitutional provisions.

5

**VENUE**

6

11.     Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)

7

because the unlawful acts, practices and omissions giving rise to the claims brought by Plaintiff

8

occurred in the City of San Jose, which is within this judicial district.

9

10

12.     Rule 3 of the Federal Rules of Civil Procedure and Local Rule 3-2(e) authorize

11

assignment to this division because all or a substantial part of the events and omissions giving

12

rise to Plaintiffs' claims occurred in the County of Santa Clara, which is served by this division.

13

**PARTIES**

14

13.     Each Plaintiff herein is a resident of the State of California.

15

14.     Defendant CITY OF SAN JOSE (hereinafter referred to as "CITY") is and at all times

16

mentioned herein was a municipal corporation, duly authorized to operate under the laws of the

17

State of California.  Under its supervision, the CITY operates, manages, directs and controls the

18

San Jose Police Department ("SJPD") which employs other defendants in this action.

19

15.     At all times mentioned herein, Defendant Edgardo "Eddie" Garcia was employed as the

20

Chief of Police for defendant City, the highest position in the SJPD.  As Chief, Defendant

21

Garcia is and was responsible for the hiring, screening, training, retention, supervision,

22

discipline, counseling, and control of all SJPD officers and Does 1-25.  Defendant Garcia also

23

is and was responsible for the promulgation of the policies and procedures and allowance of the

24

practices/customs pursuant to which the acts of the SJPD alleged herein were committed.

25

Defendant Garcia is sued in his individual and official capacities.

26

16.     At all times mentioned herein, Defendant Jason Dwyer was employed as an SJPD

27

Captain and assigned as the Special Operations Commander for defendant City.  As Captain,

28

Defendant Dwyer is and was responsible for the screening, training, supervision, discipline,

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824                                                                        3

counseling, and control of all SJPD officers under his command.  Defendant Dwyer also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the SJPD alleged herein were committed. Defendant Dwyer is sued in his individual and official capacities.

17.     At all times mentioned herein, Defendant Christopher Sciba was employed as a police Sergeant for Defendant City.  Defendant Sciba is sued individually and as a police sergeant for the City.  By engaging in the conduct described below, Defendant Sciba acted under the color of law and in the course and scope of his employment for Defendant City.  By engaging in the conduct described here, Defendant Sciba exceeded the authority vested in him as a law enforcement officer under the United States Constitution and as an employee of the City.

18.     At all times mentioned herein, Defendant Jonathan Byers was employed as a police Sergeant for Defendant City.  Defendant Byers is sued individually and as a police officer for the City.  By engaging in the conduct described below, Defendant Byers acted under the color of law and in the course and scope of his employment for Defendant City.  By engaging in the conduct described here, Defendant Byers exceeded the authority vested in him as a law enforcement officer under the United States Constitution and as an employee of the City.

19.     At all times mentioned herein, Defendant Jared Yuen was employed as a police officer for Defendant City.  Defendant Yuen is sued individually and as a police officer for the City. By engaging in the conduct described below, Defendant Yuen acted under the color of law and in the course and scope of his employment for Defendant City.  By engaging in the conduct described here, Defendant Yuen exceeded the authority vested in him as a law enforcement officer under the United States Constitution and as an employee of the City.

20.     The true names and capacities of Defendants sued herein as Does 1-100 ("Doe defendants") are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names, and Plaintiffs will seek leave to amend this complaint to show their true names and capacities when the same are ascertained.  At all material times, each Doe defendant was an employee/agent of Defendant City of San Jose acting within the course and scope of that relationship.

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824                                                                                   4

21.     Plaintiffs are informed and believe and thereon allege that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiffs. Further, one or more Doe defendants were at all material times responsible for the hiring, training, supervision, and discipline of other defendants, and/or directly responsible for violation of Plaintiffs' rights.

22.     Each individual defendant (meaning non-municipal defendants) is sued in his/her individual and official capacities.

23.     Plaintiffs are informed and believe, and thereon allege, that each of the defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.  Plaintiffs are further informed and believe, and thereon allege, that each of the defendants herein gave consent, aid, and assistance to each of the remaining defendants, and ratified and/or authorized the acts or omissions of each defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

24.     At all material times, each defendant was jointly engaged in tortious activity, resulting in the deprivation of Plaintiffs' Constitutional rights and other harm.

25.     At all material times, each defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

26.     At all material times, POLICE CHIEF Eddie Garcia, Captain Jason Dwyer, Sergeant Christopher Sciba, Sergeant Jonathan Byers, Officer Jared Yuen, and Does 1-100 acted pursuant to the actual customs, policies, practices and procedures of the San Jose Police Department and Defendant City of San Jose.

**STATEMENT OF FACTS**

27.     On Monday, May 25, 2020, a Minneapolis police officer brutally murdered George Floyd, an unarmed and non-resisting Black man, while other police stood by and watched.

---

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824                                                                    5

28.     Innumerable people held peaceful protests across the world condemning police brutality and systemic racism in the wake of the state sponsored and/or excused murders of George Floyd, Breonna Taylor, Ahmaud Abrey, Tony McDade, and countless others.

29.     Throughout San Jose, protesters honored the men and women killed by local law enforcement: Anthony Nunez, Jacob Dominguez, Jennifer Vasquez, Rudy Cardenas, Richard Harpo Jacquez, Antonio Guzman Lopez, Richard Lua, Isai Lopez, Jesus Geney Montes, Walter Roches, Daniel Pham, Aaron James Phillips, Steve Salinas, Diana Showman, Bich Cau Thi Tran, Phillip Watkins, Oscar Grant III, Alan Blueford, Yuvette Henderson, Richard Perkins, Jr., Dujuan Armstrong, Kayla Moore, Jody Mack Woodfox, Jessica Williams, Jesus Delgado Duarte, Jehad Eid, Sahleem Tindle, and countless others.

30.     These constitutionally protected and essential protests occurred and continue amid an unprecedented public health crisis. Novel coronavirus, COVID-19, has killed over 136,000 Americans and continues to spread. The virus is commonly understood to be transmittable through exposure to respiratory droplets. Public health officials advised people to wear masks if they were outside and to stay six feet apart. In an effort to mitigate the number of people infected, the County of Santa Clara enforced a shelter-in-place order and social distancing protocols.

31.     On May 29, 2020 through June 2, 2020 a protest was held in downtown San Jose. On this first day of the protest, Plaintiffs Derrick Sanderlin, Cayla Sanderlin, Breanna Contreras, Pietro di Donato, and Adira Sharkey participated as peaceful demonstrators.  On May 30, 2020 the protest continued as Plaintiff Shante Thomas watched from her third story window overlooking E. Santa Clara Street as she video-recorded protestors and police; On June 2, 2020, Plaintiff Joseph "JT" Stukes attended the protest as a peaceful demonstrator.

32.     At all material times, each Plaintiff was engaged in constitutionally protected activity concerning matters of great public concern in a public forum (except for Shante Thomas who was inside her own home), including exercise of their rights to freedom of speech, assembly, association, conscience, and press.

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824                                                                                    6

33.   At all material times, each Plaintiff herein acted peacefully and lawfully, never threatened any person, and never resisted any lawful order by any police officer.

34.   All Defendants herein planned, authorized, directed, ratified, and/or personally participated in the following conduct:

35.   On May 29, 2020, demonstrators were assembled around 2:00pm in downtown San Jose to stage a peaceful protest. The demographic of demonstrators included people of all different heritages and ages. Upon information and belief, many of the demonstrators were high school students. The demonstrators practiced social distancing by wearing masks. The protest was peaceful. Police presence, however, increased around 4:00pm. A small army of police in riot gear approached from the East on Santa Clara Street.  There was another contingent of uniformed law enforcement to the North on Sixth Street at the same time. At all relevant times, no incident occurred justifying SJPD to categorize the protest as an unlawful assembly and to use force against the demonstrators.

36.   Seventy-five-year-old Plaintiff, Pietro "Peter" Di Donato, watched coverage of the protest on the local news as he sat in his home only blocks from the protest.  He was inspired to become one more voice in the crowd so around 3:00pm he put on his shoes, walked out his front door and joined the protest as a peaceful demonstrator around S. 14th Street and E. Santa Clara Street.  He marched with the group of mostly young people to 4th Street to Highway 280, then back down 4th Street to City Hall.  They assembled in front of City Hall and chanted "Black Lives Matter" and other progressive slogans.  Peter did not participate in nor witness any violence or destruction of property.

37.   Upon information and belief, SJPD command including Defendants Chief Eddie Garcia and Captain Jason Dwyer authorized and/or ordered the use of "kettling" as a crowd control tactic. Kettling, which derives from a German military term referring to an army surrounded by a much larger force, is a police tactic whereby officers confine a large group of people to a designated space by surrounding them on all sides so that there is no escape. By doing so, the officers effectively control people's movements.

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824                                                                 7

38.     Kettling leads to the unlawful seizure of people without a reasonable basis, creates panic, elevates tensions, and chills speech. SJPD accomplished this by forming police lines and by driving vehicles towards demonstrators.

39.     On this occasion, SJPD kettled demonstrators before using dispersing tactics such as tear gassing and using "less-lethal" weapons to shoot rubber bullets and bean bag rounds at them.

40.     "Less-lethal" impact munitions, like rubber bullets and bean bag projectiles, are used to disorient and incapacitate.

41.     The bean bag rounds are fabric bags filled with small lead shot or silica.

42.     When an officer uses "less-lethal" weapons on a person, injury should be expected. Upon contact with a human body the object creates an impact shock wave and produces blunt force trauma.  The kinetic energy created by a thrown fastball pitch is 97 foot pounds, while a 40-gram bean bag round like the ones shot at San Jose protestors on May 29, 2020, creates 120 foot pounds of kinetic energy.

43.     Rubber bullets, foam batons, and bean bag rounds are used as a form of pain compliance.

44.     Less-lethal projectiles can cause serious injury when deployed from distances of less than fifteen feet.

45.     Firing these "less-lethal" impact munitions at the groin, head, neck or chest is lethal force.

46.     Defendant Christopher Sciba, a Sergeant with the SJPD Training Unit, prepared SJPD training materials on the use of less lethal weapons and these materials were used to train SJPD officers. He included a slide with a cartoon that mocks shots to the groin. The cartoon depicts two cavemen who fell a giant mammoth with their tiny arrow by shooting it in the groin.  This slide immediately follows the slide which covers where the shooter should aim and which body parts to avoid.

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824                                                                                    8

47.     The entire 50 slide PowerPoint presentation includes no mention of de-escalation, and the final slide synthesizes the SJPD message to trainees regarding use of "less-lethal" weapons: "Do not hesitate.  Always win."

48.     Defendants Police Chief Garcia, Captain Dwyer, Sergeant Sciba and Doe Defendants authorized untrained officers to be equipped with these "less-lethal" riot guns and gave them license to shoot protestors even though they had not been trained on how to safely deploy the weapons.

49.     Defendant Jared Yuen and Does 1-100 did not have training on less lethal weapons in at least the last five years.

50.     The manufacturer of the weapon requires that certification in its use be renewed every two years.

51.     Officers have a duty to warn, if at all possible, before using force, including less-lethal rounds.  None of the Plaintiffs were warned that force would be used on them before they were shot at.

52.     Defendants Police Chief Garcia, Captain Dwyer and Doe Defendants planned, authorized, ordered, permitted, and ratified the SJPD response to this entire demonstration, including but not limited to the following:

53.     SJPD wrongly declared the protest an unlawful assembly through a loudspeaker. The announcement was inaudible and/or unclear.

54.     Around 4:00pm, the police officers formed a barricade near 8th Street behind the demonstrators who were walking west on E. Santa Clara Street toward City Hall, away from the officers.  Plaintiff Adira Sharkey lives nearby and decided to take her dog to the protest and stroll to Highway 101.  Not long after 4:00pm, Adira left her apartment and had only walked one block to E. Santa Clara and 7th Street when SJPD started throwing tear gas at people.  Adira turned onto a side street and returned to her apartment to drop her dog off, then returned to the protest with her roommates.

55.     Shortly thereafter and without warning, SJPD officers threw teargas canisters and shot rubber bullets at the demonstrators. Plaintiffs observed innocent, nonviolent people getting

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824                                                                        9

struck with the rubber bullets after being fired on at close range, which escalated tensions and turned a peaceful protest into police-created chaos.

56.     Captain Dwyer would later say that "when my boots hit the ground, at Seventh and Santa Clara, I stepped into a war zone," and that "at 5pm on Friday, I made the call immediately.  It wasn't that difficult."  On that Friday, May 29, SJPD fired thirty-one pepper ball projectiles, thirty-two tear gas canisters and at least 400 foam batons and/or rubber bullets into the crowds.  Captain Dwyer later stated in a press conference on June 4 that he has no regrets about his decision of May 29.

57.     Just after 5:00pm, twenty-one-year-old Breanna Contreras and her eighteen-year-old sister were standing on the sidewalk near the intersection of E. Santa Clara Street and 7th Street when she heard a commotion up ahead and could see a cloud of teargas cover the crowd, and heard screaming and coughing. She could not see the source of the commotion due to the crowd of people so she stood tall to peer over and suddenly felt a strong impact to her right temple. The force of the impact pushed her back a few steps and she heard the repeated sound of firing of a weapon and realized she had been hit with a projectile.  She reached her hand up and felt blood on her face. A man ran up to her and helped her stop the bleeding with her own mask. He had been shot in the leg. A nearby woman was shot in the stomach.

58.     Breanna sat on the sidewalk stunned, her head throbbing in pain as she tried to gather herself. She had heard no warnings from police and was completely blindsided by the use of force. Her sister, who had been tending to someone else who had been tear-gassed, saw Breanna's injury and immediately walked her down the street to find a way out of the area. Her sister saw an ambulance and waved down the EMTs, who cleaned Breanna's injury and gave her an icepack, telling her to go to the doctor.

59.     Also around 5:00pm, seventy-five-year-old Plaintiff Peter di Donato was shot without warning or reason as he tried to de-escalate police who were shooting the young people he had been marching with for hours, and who he had seen were non-violent, peaceful and passionate demonstrators.

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824                                                                                     10

60.     Concerned for the innocent protestors against whom excessive force was being used, including by Defendant Yuen, Peter approached an officer in the front of the line and said "you should not be doing this.  This is wrong!"  The officer threatened Peter with his baton and told him to back up.  Peter complied and backed up a few feet and shortly thereafter the officers fired rubber bullets, flash grenades, and tear gas on Peter and the other nonviolent protestors.

61.     The use of force was prolonged, unnecessary, and an egregious overreaction for any failure to disperse.  Peter at this point resolved not to back up any further in protest to this conscious shocking excessive use of force and stood his ground.  An officer shot Peter in his lower left leg above his ankle.  The pain was strong and immediate, so Peter retreated to the side of the street and took cover behind a street lamp pole because he feared being shot in the eyes.  Within a minute he returned to the street despite the constant barrage from SJPD, so as to not let them "win" with their abusive tactics.

62.     Around 6:00pm Peter walked home to ice and rest his wound.  He photographed his injury and alerted his friends and family as to what had happened.  He also preserved video he took at City Hall at 4:58pm and the photo of his wound at home at 6:09pm, both geo-located and time-stamped.

63.     Around 6:00pm Cayla began to fear for her safety and she walked to the side of the street near Pho Passion restaurant, where she somehow got stuck between two lines of SJPD officers, with officers from each line each telling her to go in the opposite direction. Cayla was unreasonably detained due to this kettling technique and the conflicting verbal commands of officers. An elderly couple who appeared to be in their seventies were also trapped with Cayla. Cayla was frightened when she saw an officer use the tip of his rifle to push the elderly gentleman.

64.     Cayla saw officers push demonstrators with their batons and continue to fire projectiles into the crowd.  Cayla saw a young man get shot in the ribcage which knocked the wind out of him and his friends had to help him to safety.  Around this time the police were also using flash bang grenades. Cayla could not control her tears and shaking.  She found Derrick in the crowd of demonstrators and asked if they could go home because she could not handle any more of

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824                                                                              11

the police brutality.  Derrick suggested that she take a walk to calm herself because he needed to stay in solidarity with his fellow demonstrators.  Cayla agreed and walked west, turning north on 6th Street.  Once out of the chaos, Cayla was able to calm herself and received a phone call from her friend Kenisha who was on her way downtown.  Cayla and Kenisha met and walked together to the corner of 6th and E. Santa Clara St behind the line of officers with the intention of praying for the safety of everyone involved and to keep eyes on Derrick.

65.    After fifteen minutes of observing and praying, Cayla called Derrick because she had lost sight of him in the crowd.  He answered and said he had just been shot.

66.    Around 6:20pm near the First Methodist Church at E. Santa Clara Street and 5th Street Derrick had put his hands in the air and implored police not to continue shooting protestors. Derrick was not posing a threat or invading the personal space of officers, however they took aim at him and shot him in the groin, rupturing his testicle. Media and civilian video footage shows Derrick holding a carton of milk in one hand and his cardboard sign that read "We R Worth of Life" in the other, at the time he was shot.

67.    Video of the incident shows officers, including Officer Jared Yuen, escalating the crowd and shooting people at close range. Defendant Yuen is also captured on video around this time saying, "shut up, bitch," to a young woman who asked him why he was "on that side of the line." Then a protestor is heard saying "fuck you," causing Yuen to rush forward and shoot towards the protester out of anger, and not because the use of force was reasonable.

68.    None of Yuen's SJPD colleagues or superiors intervened nor reported his outrageous behavior and excessive use of force, and therefore failed to protect Plaintiffs from his abusive tactics.

69.    Video shows a nearby officer said to his colleague, "black guy… trash can" and motioned toward Derrick Sanderlin. The colleague responded "copy" and motioned to another officer who then rushes over and fires at Derrick. On information and belief, Officer Jared Yuen shot at Derrick Sanderlin at least once, along with two other officers who deployed their "less-lethal" weapons at him. One of these three shots is the shot that hit Derrick in the groin.

---

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824

12

One officer also shot a metal cannister after shooting Derrick in the groin, which is not an authorized use of the riot gun according to manufacturer guidelines.

70.     Derrick fell to the ground, immobile, but no aid was rendered by officers, including Defendants Yuen and Does 1-100. He was helped out of the area by bystanders and his wife Cayla met him and found him lying alone near First United Methodist Church, unable to walk. She ran to him while Kenisha went to get her car.  The SJPD officers were deploying tear gas which burned Derrick and Cayla's eyes and throats, causing them to cough so Cayla helped Derrick stand and walk away from the officers.  They could barely open their eyes due to the tear gas and walked very slowly and with limited sight.  The cloud of tear gas completely engulfed them, and they could not see more than a few feet in front as they walked.  Once they got to the corner of 5th and St. John, Derrick lay on the ground because it hurt to walk.  Cayla remembered that she had packed a bag of frozen okra to keep the milk they brought to the protest cold, and she gave it to Derrick to ice his groin.

71.     Kenisha found Derrick and Cayla and drove them home. Derrick tried to rest at home rather than expose himself to Covid-19 at the hospital, but the pain was unbearable. The next day he had an ultrasound of his scrotum to check for injury.  The radiologist had said that the results would come back in a couple of days, but the pain and swelling was getting worse so Cayla drove Derrick to the emergency room and shortly thereafter he was admitted for emergency surgery for a ruptured testicle. Due to Covid-19 restrictions, Cayla was not allowed inside to support Derrick during this traumatic time, and she instead had to wait in the hospital parking lot alone. Once he was discharged, he had a three-inch surgical scar on his scrotum as well as scabs where the projectile had broken the skin on the shaft and tip of his penis.

72.     Around 8:00pm on May 29, Plaintiff Adira Sharkey walked over to Cesar Chavez park where people were regrouping.  Police continued to fire tear gas at people in the park and it got into her eyes, burning them.  Other demonstrators helped her flush her eyes with water and once she could see again, she recognized the teenagers who had helped her as recent graduates from Del Mar High School where she works.

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824

13

73.     At that point Adira felt that her role at the protests changed from just being a demonstrator, to feeling protective of these former students from her school and she worried about them facing police brutality. She later saw them across the street and crossed the street to give them her phone number, telling them that she lived nearby in case anything happened to them or they needed anything.

74.     Right after saying goodbye to the teens, Adira crossed the street and had re-entered Cesar Chavez park where her roommates stood, when she suddenly felt the painful impact of a rubber bullet in the back side of her ribs. The wind was almost knocked out of her and she hunched over and hobbled over to hide behind a redwood tree and catch her breath. She felt nauseas and stunned. The shot came out of nowhere because she had not realized she was in the line of fire and she thought the park was a safe place to gather. Adira is informed and believes that it was a direct shot at her and not a ricochet because the next closest person to her at the time of the shooting was about 12 feet away and the injury she sustained was very painful and the shape was a perfect circle like the projectile.

75.     The protests continued the following day, May 30, and Plaintiff Shante Thomas spent much of the day watching the protests and the police response from her living room window which overlooks E. Santa Clara Street. Around 11:45pm she was video recording police as they stood across E. Santa Clara Street and shone their high-powered flashlights in her windows on the third floor. They were upset because she had hollered out the window, insisting that they stop mistreating protesters and letting them know that she was recording them.

76.     The next thing she knew, she heard the blast of a weapon and glass shattering as her living room window broke in her face.  She was struck in the chest with a rubber bullet and would later find a total of thirteen projectiles in her one-bedroom apartment, her walls scarred with gashes from the rubber bullets.  The SJPD officers also shot out her bedroom window and launched a tear gas canister into her apartment, causing her to cough and her eyes burn so much that she had to temporarily vacate the apartment.

77.     Defendant Sergeant Jonathan Byers was present and participated in the use of force on Shante as retaliation for her filming the police and criticizing their abuse of protesters. Byers

---

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824

14

personally deployed rubber bullets into her occupied residence.  Byers lied and said that beer bottles were being thrown from Shante's unit, when this is demonstrably false.

78.     SJPD officers then lied to the security guard and/or building management, saying that someone from Shante's unit had been throwing beer bottles at police prior to the shooting. This resulted in Shante's landlord sending her a notice to cease and telling her to pay to replace the windows since she had thrown beer bottles at police and therefore been the cause of the damage.

79.     Shante, determined to not be evicted and not having the means to pay for the windows, contacted the Mayor's office for help.  Paul Pereira from the Mayor's office wrote to Shante's building management, advising that he had personally been at the scene at 7am the morning after the windows were broken to help with cleanup efforts.  He stated that he inspected the front of the building for damage and personally swept up the broken glass in front of the building, and that all of the glass was window glass, none of it was glass with beer labels of the color of beer bottles.

80.     Paul Pereira further stated that two people contacted the Mayor's office saying that they have video of the police aiming high and hitting the building on the 2nd and 3rd floors of the building with rubber bullets.

81.     Defendant Sergeant Jonathan Byers has a long history of excessive use of force during his employment with SJPD, including more than a dozen excessive force allegations. In a filing with the Superior Court of California, County of Santa Clara, Byers was accused of "a pattern of behavior," including that Byers "does use excessive force against persons of color and then crafts a story to justify his actions." Instead of disciplining or terminating Byers, SJPD ratified his unconstitutional conduct by promoting him to the rank of sergeant in 2019.

82.     On June 2, 2020, Plaintiff Joseph "JT" Stukes was peacefully protesting at City Hall in downtown San Jose.  He and other protestors held signs and chanted "Black Lives Matter." Sometime after 8:30pm, approximately fifty police officers kettled JT and other peaceful demonstrators and attempted to drive them out of City Hall plaza.  JT had been peacefully practicing civil disobedience by being out after curfew, when officers harassed him while

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824

15

letting non-protestors walk around after curfew without police attention.  JT accused police of discriminatory enforcement of the curfew by focusing their attention on protestors because of their exercise of freedom of speech, and he shouted, "stifling speech is fascist!"

83.    City of San Jose's 8:30pm curfew unlawfully suppressed Plaintiffs' First Amendment rights under the U.S. Constitution.  Plaintiffs' liberty was curtailed by imposing unprecedented curfew orders on virtually everyone living in San Jose.  The City's order eliminated all political protest in the evening hours, during a time when thousands of law-abiding people seek to express their opposition to racially discriminatory police violence.

84.    JT continued his protest until he was rushed by dozens of SJPD officers, at which point he complied with the armed officers and was dispersing in the only available direction due to the kettling, when he was purposely tripped from behind by an officer.  As a result of the trip, JT fell and bloodied his hands and knees.

85.    While JT was still on the ground, Doe officers 1-100 shot at him with their less-lethal weapons even though he posed no threat and was attempting to disperse as ordered.  JT was struck from the back on his left hip with a 40mm foam baton, as well as on the back of his right leg, leaving a nine-inch bruise.  Doe officers 1-100 deployed bean bag rounds, one of which ripped a hole through his closed backpack and he later discovered the stun bag in his backpack. He scrambled back to his feet and continued rushing to disperse to avoid use of force and officers unnecessarily and for the purpose of causing harm, deployed their less-lethal weapons in his direction approximately fifty times.

## DAMAGES

86.    All Plaintiffs suffered suppression of speech and physical and emotional injuries from the use of force.

87.    JT suffered large contusions on his leg and hip from the blunt force trauma caused by the foam batons Defendants shot at him. As of the date this filing, he still has a two to three inch bruise on the back of his right leg where he was struck.

88.    Derrick's urologist has informed him that he has a high chance of sterility due to the rupture and that they will not know for sure until he and Cayla attempt to get pregnant. Before

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824                                                                 16

this incident, Cayla and Derrick had planned to wait two more years before starting a family but have been forced by this incident to consult with fertility specialists and have been advised to advance their plans to have children. Derrick has also been forced to research freezing his sperm but he is not yet healed enough to be able to make a sperm bank deposit and Kaiser does not do sperm banking so he would have to pay out-of-pocket at another facility.

89.     Derrick is still not fully healed from his injury and he and Cayla have not been able to have sexual intercourse due to this injury.

90.     The blunt force trauma to Breanna's temple caused the entire right side of her face to swell up, and her eye was bloody and swollen shut. She was dizzy and nauseas. The swelling lasted for more than a week and her eyeball was red from the burst blood vessels for over a month.  The laceration on her temple had a scab the size of a quarter for over a month and has only recently fallen off, revealing a red mark and scar the size of a quarter. She had bruising under her eye for approximately one month.

91.     Up until this excessive use of force by SJPD officers, Peter was an active senior who had enjoyed miles-long hikes every other day.  Now, even though the softball sized bruise has faded, he continues to have pain in his lower leg and is under the care of a physician for his persistent pain.

92.     Adira suffered a baseball sized bruise to her torso and it hurt to inhale for a day after the shooting.  She had difficulty sleeping due to the pain for a couple nights and was still sore for two weeks after the incident.

93.     Shante suffered pain to her chest where she was struck with the rubber bullet and continues to follow up with her doctor since the impact was near her heart.  She is unnerved and anxious as a result of the invasion into the sanctity of her home and had to spend many nights at a motel before the tear gas was cleaned up and the building finally fixed her windows. She no longer feels safe in her apartment and is scared and distrustful of police.

94.     As a proximate result of Defendants' conduct Plaintiffs suffered severe emotional and mental distress, fear of law enforcement, terror, nightmares, flashbacks, anxiety, depression, humiliation, embarrassment, and loss of their sense of security, dignity, and pride.

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824

17

95.     The conduct of the individual Defendants was malicious, sadistic, wanton, and oppressive. Plaintiffs are therefore entitled to award of punitive damages against the Defendants.

## CLAIMS FOR RELIEF

### First Cause of Action

### (First Amendment – 42 U.S.C. § 1983)

(By Plaintiffs Against all Defendants)

96.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

97.     By the actions and omissions described above, Police Chief Edgardo Garcia, Captain Jason Dwyer, Officer Jared Yuen, Sergeant Jonathan Byers and DOES 1-100, violated 42 U.S.C. §1983, depriving Plaintiffs of the clearly-established and well-settled right to be free from interference with, or retaliation for, their exercise of constitutionally protected rights, including but not limited to speech, assembly, association, and conscience, as secured by the First and Fourteenth Amendments.

98.     Defendants subjected Plaintiffs to Defendants' wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

99.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages as set forth at paragraphs 83-91, above.

100.    The conduct of Defendants Police Chief Edgardo Garcia, Captain Jason Dwyer, Officer Jared Yuen, Sergeant Jonathan Byers and DOES 1-100 entitles Plaintiffs to punitive damages and penalties allowable under 42 USC §1983 as set forth at paragraph 92, above.

101.    Plaintiffs also claim reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and as otherwise allowed by law.

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824                                                                          18

**Second Cause of Action**

**(Fourth Amendment – 42 U.S.C. § 1983)**

(By Plaintiffs Against all Defendants)

102.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

103.    By the actions and omissions described above, Police Chief Edgardo Garcia, Captain Jason Dwyer, Officer Jared Yuen, Sergeant Jonathan Byers and DOES 1-100, violated 42 U.S.C. §1983, depriving Plaintiffs of the clearly-established and well-settled right to be free from excessive or unreasonable force as secured by the Fourth Amendment, the right to be free from unreasonable searches and seizures as secured by the Fourth Amendment.

104.    Defendants subjected Plaintiffs to Defendants' wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

105.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages as set forth at paragraphs 83-91, above.

106.    The conduct of Defendants Police Chief Edgardo Garcia, Captain Jason Dwyer, Officer Jared Yuen, Sergeant Jonathan Byers and DOES 1-100 entitles Plaintiffs to punitive damages and penalties allowable under 42 USC §1983 as set forth at paragraph 92, above.

107.    Plaintiffs also claim reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and as otherwise allowed by law.

**Third Cause of Action**

**(*Monell* Liability - First and Fourth Amendment – 42 U.S.C. § 1983)**

(By Plaintiffs Against City of San Jose)

108.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

109.    The unconstitutional actions and/or omissions of Defendants Police Chief Edgardo Garcia, Captain Jason Dwyer, Sergeant Christopher Sciba, Sergeant Jonathan Byers, Officer

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824

19

Jared Yuen, and DOES 1-100 were pursuant to the following customs, policies, practices, and/or procedures of DEFENDANT CITY OF SAN JOSE, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officers for the San Jose Police Department:

    a.    to cover-up police misconduct and  violations of constitutional rights by allowing, tolerating, and/or encouraging police officers to file false police reports, copy other officers' police reports and submit them as their own, make false statements, falsely charge individuals with crimes or wrongs, obstruct and/or interfere with investigations of unconstitutional, unlawful, or improper police conduct; by withholding and/or concealing material information; and by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional, unlawful, or wrongful police activity;

    b.    to allow, tolerate, and/or encourage the "Code of Silence" protecting police officers from responsibility for their misconduct, including the suppression and/or fabrication of evidence and cover-up of police misconduct;

    c.    to interfere with, obstruct, and/or violate the rights of individuals in their exercise of constitutionally protected rights, and to chill and/or deter those individuals from exercising their rights, including but not limited to their right to freedom of speech, assembly, association, conscience, and press;

    d.    to use "less lethal" munitions – including but not limited to concussion or "stinger" grenades, rubber bullets, foam batons, "flexible batons," and/or "bean bags" consisting of lead birdshot shot wrapped in a bag and fired from a 12 gauge shotgun – as well as solid batons and other uses of force, for crowd control in a manner, and under circumstances, where such use of force would be objectively unreasonable;

    e.    to use "less lethal" munitions – including but not limited to concussion or "stinger" grenades, rubber bullets, foam batons, "flexible batons," and/or "bean

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824

20

1    bags" consisting of lead birdshot shot wrapped in a bag and fired from a 12 gauge

2    shotgun – as well as solid batons and other uses of force, against individuals who

3    are peacefully and lawfully exercising their First Amendment rights, and against

4    such individuals because of their viewpoint and/or the perceived content of their

5    expression;

6    f.    to select and/or allow Defendant Byers to participate in a role where Byers could

7          shoot demonstrators and others at the San Jose protest with rubber bullets and/or

8          other munitions, selecting his own targets, despite his known history in the

9          department, including his evaluations and prior complaint and misconduct history,

10         and without due concern for Defendant Byers' adherence to generally accepted

11         law enforcement standards concerning bias, truthfulness, judgment, and use of

12         force.

13   g.    to select and/or allow Defendant Yuen to participate in a role where Yuen could

14         shoot demonstrators and others at the San Jose protest with rubber bullets and/or

15         other munitions, selecting his own targets, despite his not having been trained on

16         less lethal weapons in at least the last five years.

17   h.    to select and/or allow Defendant Sciba to participate in a role where Sciba could

18         train other officers regarding use of force, less-lethal munitions, and anti-bias,

19         despite his known history in the department, including his evaluations and prior

20         complaint and misconduct history, and without due concern for Defendant Sciba's

21         adherence to generally accepted law enforcement standards concerning bias,

22         truthfulness, judgment, and use of force.

23   110.  DEFENDANTS CITY OF SAN JOSE, POLICE CHIEF EDGARDO GARCIA,

24   CAPTAIN DWYER, SERGEANT SCIBA, SERGEANT BYERS AND DOES 1-100 failed to

25   properly train, instruct, monitor, supervise, and discipline Defendants and other Police

26   Department personnel, with deliberate indifference to Plaintiffs' constitutional rights, which

27   were thereby violated as described above.

28

---

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824                                                    21

111.     The unconstitutional actions and/or omissions of Defendants and other Police Department personnel, as described above, were known, and were ordered, approved, tolerated and/or ratified by policy making officers for the San Jose Police Department and the City of San Jose, including but not limited to POLICE CHIEF EDGARDO GARCIA, CAPTAIN DWYER, SERGEANT SCIBA, SERGEANT BYERS AND DOES 1-100.

112.     The aforementioned customs, policies, practices, and procedures, as well as the failures to properly and adequately train, instruct, monitor, supervise and discipline of Defendants CITY OF SAN JOSE, POLICE CHIEF EDGARDO GARCIA, CAPTAIN DWYER, SERGEANT SCIBA, SERGEANT BYERS AND DOES 1-100 were a moving force and/or a proximate cause of the deprivations of Plaintiffs' clearly-established and well-settled constitutional rights in violation of 42 USC §1983, as more fully set forth above.

113.     As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of DEFENDANTS CITY OF SAN JOSE, POLICE CHIEF EDGARDO GARCIA, CAPTAIN DWYER, SERGEANT SCIBA, SERGEANT BYERS AND DOES 1-100, as described above, Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs and attorneys' fees as set forth in paragraphs 83-91, above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.)     Award Plaintiff general, special and compensatory damages in an amount to be proven at trial.

2.)     Award Plaintiff punitive damages against individually named Defendants, and each of them, for their extreme and outrageous conduct in complete disregard for the rights of the Plaintiff.

3.) Award Plaintiff statutory damages and/or attorney's fees against all Defendants as allowed by 42 U.S.C. §1988.

4.) Injunctive relief, including but not limited to the following:

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824                                                                22

i.   an order prohibiting Defendants and their police officers from unlawfully interfering with the rights of Plaintiffs and others in connection with public demonstrations, to freedom of speech, association, assembly, beliefs and conscience;

ii.   an order prohibiting Defendants and their police officers from discriminating or retaliating against Plaintiffs or others in connection with public demonstrations based upon their assertion of rights protected by the First and Fourteenth Amendments to the U.S. Constitution, and/or based on their viewpoint or the perceived content of their expression;

iii.   an order requiring Defendants to rescind all of their policies, practices, procedures, and/or customs allowing police officers to deploy tear gas for crowd control;

iv.   an order requiring Defendants to rescind all of their policies, practices, procedures, and/or customs allowing police officers to employ so-called "less lethal" weapons as crowd control mechanisms, and further prohibiting Defendants from permitting their police officers to deploy such weapons without legal justification or against nonviolent crowds or demonstrators;

v.   an order requiring that in the event Defendants and their police officers employ so-called less lethal force, such force only be used in a lawful manner;

vi.   an order requiring Defendants to train all San Jose Police Officers concerning the law and this Court's orders concerning the issues raised in injunctive relief requests i-v, above;

//

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824

23

5.) Grant Plaintiff such other and further relief as the Court deems just and proper.

Dated: July 18, 2020

_____
SARAH E. MARINHO
Attorney for Plaintiffs

JURY DEMAND:  Plaintiff demands a trial by jury in this matter, pursuant to FRCP 38(a).

Dated: July 18, 2020

_____
SARAH E. MARINHO
Attorney for Plaintiffs

Complaint for Damages for Violation of Civil Rights - Jury Trial Demanded
Sanderlin, et al. v. City of San Jose, et al.
Case No. 20-cv-04824                                                    24