1
2
3
4
5
6

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

7

DERRICK SANDERLIN, et al.,

8
                    Plaintiffs,

9
        v.

10
CITY OF SAN JOSE, et al.,

11
                    Defendants.

Case No.  5:20-cv-04824-BLF

**ORDER REGARDING MOTIONS *IN LIMINE***

[Re:  Dkt. Nos. 165, 166, 167, 168, 172, 173, 174]

12
13          This is a civil rights action under 42 U.S.C. § 1983 and California's Bane Act, brought by

14   Plaintiffs Derrick Sanderlin, Cayla Sanderlin, Breanna Contreras, Pietro di Donato, Adira

15   Sharkey, Joseph Stukes, and Vera Clanton ("Plaintiffs") against Defendants City of San Jose,

16   Sergeant Lee Tassio, Officer Michael Panighetti, Officer Juan Avila, and Officer Jonathan

17   Marshall ("Defendants").  Plaintiffs bring suit for injuries sustained while participating in civil

18   rights demonstrations in response to the murder of George Floyd by Minneapolis police officer

19   Derek Chauvin.

20          The Court held the Final Pretrial Conference in this case on April 17, 2025, during which

21   the Court issued oral rulings on the Parties' motions *in limine*.  *See* Motions, Dkt. Nos. 165, 166,

22   167, 168, 172, 173, 174.  The Court's rulings on the motions *in limine* are summarized as follows.

23   **I.      PLAINTIFFS' MOTIONS *IN LIMINE***

24          **A.  Plaintiffs' Motion *in Limine* No. 1 to Preclude Admission of Images and Other
25              Media Depicting Violence, Officer Injuries, and Property Damage**

26          In their first motion *in limine*, Plaintiffs seek an order excluding "images and other media

27   evidence depicting violence, officer injuries[,] and property damage."  Dkt. No. 172, Plfs.' MIL

28   No. 1 at 2.  Plaintiffs argue that this evidence is irrelevant because it is "undisputed that none of

the plaintiffs engaged in violence or partook in property damage," and that it is inflammatory in light of the "magnified emotional impact" of "visuals of violence scenes." *Id.* at 2; *see also id.* at 4–5. Plaintiffs also request that a limiting instruction be given if violence or property damage is mentioned at trial. *Id.* at 2.

In response, Defendants argue that the evidence is relevant to the "totality of the circumstances" analysis on section 1983 and Bane Act claims for Fourth Amendment violations, since police officers "may rely on circumstances prior to and until their deployment of force . . . to assess the risks posed" by the situation. Dkt. No. 186, Opp. to Plfs.' MIL No. 1 at 1–2. Defendants argue that this assessment may include "the actions of others surrounding or near the person ultimately subjected to force." *Id.* at 2. Thus, Defendants state that media records of violence and/or property damage are "presumably relevant insofar as an officer experienced them." *Id.* at 3. Additionally, Defendants argue that this kind of media evidence is circumstantial evidence of intent that bears upon First Amendment and Bane Act claims, as well as evidence of a "clear and present danger" that might affect the exercise of First Amendment rights. *Id.* at 3–4.

The Court DENIES this motion *in limine*. Defendants are correct that the challenged evidence is relevant. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. In this case, the remaining Fourth Amendment claims require an objective inquiry "that asks whether an officer's actions were reasonable in light of the circumstances he confronted." *Villanueva v. California*, 986 F.3d 1158, 1169 (9th Cir. 2021) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "Determining whether a particular use of force was reasonable 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake," evaluating various factors including "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others[,] (3) whether he was actively resisting arrest or attempting to evade arrest by flight, and any other exigent circumstances that existed at the time of the arrest." *Id.* (citing *Graham*, 490 U.S. at 396). As Defendants note, this inquiry takes into account the "totality of the circumstances" facing the

United States District Court
Northern District of California

1    officer.  *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019) (citing *Byrd v. Phoenix*

2    *Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018); *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th

3    Cir. 2010)).  The totality of the circumstances assessment can include the surrounding conditions

4    and the actions of others associated with person against whom force is ultimately used, *see Nelson*

5    *v. City of Davis*, 685 F.3d 867, 880–81 (9th Cir. 2012) (considering the threat posed by the

6    plaintiff's associates as well as the plaintiff himself); *see also Mattos v. Agarano*, 661 F.3d 433,

7    450 (9th Cir. 2011), so the Court rejects Plaintiffs' argument that the defendant officers'

8    awareness of violence or property damage is not relevant unless it was being committed by a

9    plaintiff and at the precise time the force was used.

10          Likewise, the Court finds that the evidence may be relevant to Plaintiffs' surviving Bane

11    Act and First Amendment claims.  On the First Amendment claim, Mr. Sanderlin will need to

12    prove "that he was engaged in a constitutionally protected activity;" that Officer Panighetti's

13    conduct would "chill a person of ordinary firmness from continuing to engage in the protected

14    activity;" and that "the protected activity was a substantial or motivating factor" in Officer

15    Panighetti's conduct.  *Sanderlin v. Dwyer*, 116 F.4th 905, 910–11 (9th Cir. 2024) (citing *Index*

16    *Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020)).  However, if

17    retaliatory animus "was not a but-for cause of the adverse action, [then] there was no violation of

18    [Sanderlin's] constitutional rights." *Boquist v. Courtney*, 32 F.4th 764, 778 (9th Cir. 2022).  In

19    other words, there is no First Amendment violation where "the government officials would have

20    taken the same adverse action even in the absence of their animus or retaliatory motive arising

21    from the plaintiff's speech," *id.*, so it is important to Defendants' defense in this case to be able to

22    present circumstantial evidence demonstrating the reason(s) that the accused action was taken, *see*

23    *Hines v. Gomez*, 108 F.3d 265, 267–68 (9th Cir. 1997).  On the various Bane Act claims, "the

24    egregiousness required by Section 52.1 is tested by whether the circumstances indicate the

25    arresting officer had a *specific intent* to violate the [plaintiff's] right[s]." *Reese v. Cnty. of*

26    *Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (emphasis added) (quoting *Cornell v. City &*

27    *Cnty. of San Francisco*, 17 Cal. App. 5th 766, 801 (2017), *as modified* (Nov. 17, 2017)).

28    Therefore, media depicting property damage and violence could be relevant to Defendants'

United States District Court
Northern District of California

3

1   defense against Plaintiffs' attempts to establish specific intent to violate Plaintiffs' rights—

2   particularly in light of Plaintiffs' theory that vicarious liability under the Bane Act may be

3   predicated upon the conduct of an employee who is never identified by name.

4     Although the media and testimony challenged by this motion may present a modest danger

5   of prejudicial effect, the Court finds that the risk of prejudice does not substantially outweigh the

6   probative value.  Plaintiffs' Motion *in Limine* No. 1 is DENIED.  That said, the audio

7   accompanying the following media will be excluded:

| 5/29 Highway 101 ABC7 Clip | SJ405878 |
| 5/29 Protest Drone Footage | SJ003741 |

11   If desired to further limit any risk of prejudice, Plaintiffs' counsel may renew the request for a

12   limiting instruction at trial by drafting the desired language, sharing it with opposing counsel, and

13   requesting that the Court read the instruction to the jury at the appropriate time.

### B.  Plaintiffs' Motion *in Limine* No. 2 to Preclude Testimony or Evidence Regarding Protestors on the Freeway

16     In their second motion *in limine*, Plaintiffs seek an order excluding "testimony or

17   admission of images and other media evidence relating to protestors, including Plaintiffs, walking

18   on the freeway or highway, including 101 and 280."  Dkt. No. 173, Plfs.' MIL No. 2 at 2.

19   Plaintiffs argue that such imagery is irrelevant to Plaintiffs' claims, because any instance of force

20   cannot be explained by Plaintiffs' earlier presence on the freeway.  *Id.* at 2–4.  In addition,

21   Plaintiffs argue that the media evidence is excludable under Federal Rule of Evidence 403,

22   because the visual presentation of the scenes on the highway could incite inflammatory emotions

23   among the members of the jury.  *Id.* at 2.

24     Defendants argue that the evidence is relevant for five reasons.  First, Defendants argue

25   that the evidence is relevant to undermining Plaintiffs' credibility because it contradicts Plaintiffs'

26   assertion that they are law-abiding, peaceful protestors.  *See* Dkt. No. 187, Opp. to Plfs.' MIL No.

27   2 at 1.  Second, Defendants argue that the protest on the freeway on May 29, 2020, which occurred

28   prior to the times at which Plaintiffs were injured, is relevant to Defendants' defense because a

United States District Court
Northern District of California

1    finder of fact must look at the totality of the circumstances when evaluating the objective

2    reasonableness requirement in determining whether an officer used excessive force.  *Id.* at 2–3.

3    Third, Defendants argue that the media evidence is relevant to show the specific intent element of

4    Plaintiffs' Bane Act claims, as well as the retaliatory animus element under the First Amendment.

5    *Id.* at 3–4.  Fourth, Defendants argue that the evidence is independently relevant to Defendants'

6    ability to demonstrate the existence of a clear and present danger that supported dispersing the

7    protestors.  *Id.* at 4–5.  Last, Defendants argue that the relevance of the media evidence created on

8    May 29, 2020 extends beyond that date, because police officers' prior experiences can be a

9    component of the totality of circumstances assessment.  *Id.* at 5.

10       First, the Court finds that the challenged evidence is potentially relevant to impeach

11    Defendants' credibility.  "Impeachment by contradiction permits courts to admit extrinsic

12    evidence that specific testimony is false, because contradicted by other evidence[.]"  *United States*

13    *v. Castillo*, 181 F.3d 1129, 1132 (9th Cir. 1999); *see* 28 Wright & Miller, *Federal Practice &*

14    *Procedure* § 6119 (2d ed. 2025).  The admissibility of impeachment by contradiction evidence

15    should be analyzed under Federal Rules of Evidence 403 and 607.  *K.J.P. v. Cnty. of San Diego*,

16    621 F. Supp. 3d 1097, 1148 (S.D. Cal. 2022).  Here, Defendants anticipate that Plaintiffs would

17    assert that they were "law abiding, peaceful protestors."  Opp. to Plfs.' MIL No. 2 at 1.  By

18    contradiction, the evidence of highway protests could show that Plaintiffs, knowing that it was

19    unlawful to do so, nevertheless entered the highway to protest.  *Id.*  Of course, the presentations at

20    trial will ultimately determine whether evidence of the highway protests is relevant and admissible

21    for this purpose.

22       Next, the Court addresses the relevance of the evidence to Plaintiffs' Fourth Amendment

23    claims.  Again, the excessive force standard is laid out in *Graham v. Connor*, 490 U.S. 386 (1989).

24    Under the *Graham* factors analysis, whether a police officer's use of force was "'objectively

25    reasonable' [is determined] in light of the facts and circumstances confronting [the officer]."  *Id.* at

26    397.  Reasonableness is assessed by balancing "the nature and quality of the intrusion on the

27    individual's Fourth Amendment interests" against "the countervailing government interests at

28    stake*.*"  *Smith v. Agdeppa*, 81 F.4th 994, 1002 (9th Cir. 2023), *cert. denied*, 145 S. Ct. 264 (2024)

United States District Court
Northern District of California

5

1   (citation omitted). "To do so, we consider the type and amount of force inflicted in tandem with

2   (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the

3   safety of the officers or others, and (3) whether the suspect was actively resisting arrest or

4   attempting to evade arrest by flight." *Id.* (internal alterations omitted). As discussed above, *supra*

5   section I.A, Defendants' knowledge of the highway protest could potentially inform their "totality

6   of the circumstances" assessment at the scene where force was used, so footage and testimony

7   relating to the highway protests is relevant to the Fourth Amendment claims.

8           Likewise, for similar reasons as those discussed in section I.A, the Court finds that the

9   challenged evidence is relevant to the analyses of Plaintiffs' First Amendment and Bane Act

10  claims. Footage and testimony related to the highway protests may help inform issues including:

11  whether a police officer had retaliatory animus, whether the officer "would have taken the same

12  adverse action even in the absence of their animus or retaliatory motive arising from the plaintiff's

13  speech," *Boquist*, 32 F.4th at 778, and "whether the circumstances indicate the [] officer had a

14  specific intent to violate the [plaintiff's] right[s]," *Reese*, 888 F.3d at 1043.

15          Finally, the Court finds that that the probative value of the evidence outweighs the risk of

16  any prejudicial effect. As discussed above, the evidence of the highway protest is highly relevant

17  to Plaintiffs' credibility and to various elements of, and defenses to, Plaintiffs' claims. While the

18  Court acknowledges that some of the videos of protest activities at Highway 101 and/or 280 on

19  May 29, 2020 may be inflammatory insofar as the videos depict violence and injuries, this risk of

20  prejudice does not substantially outweigh the probative value of the evidence. Therefore,

21  Plaintiffs' request to exclude testimony and media evidence of the highway protest is DENIED.

22      **C. Plaintiffs' Motion *in Limine* No. 3 to Exclude the Use or Admission of Evidence
        Relating to Defendant Officers' Character or Reputation**

23

24          In their third motion *in limine*, Plaintiffs ask the Court to exclude "any and all evidence

25  regarding defendant officers' character or reputation within the police department and the San Jose

26  community." Dkt. No. 174, Plfs.' MIL No. 3 at 2. Plaintiffs anticipate that Defendants "may seek

27  to introduce evidence . . . relate[d] to [their] certifications and conduct as [] police officer[s], on

28  other occasions." *Id*. Plaintiffs seek to exclude such evidence, along with evidence related to

United States District Court
Northern District of California

6

1    "Officers' adequate or satisfactory conduct on other occasions" and "Officers' general character or

2    police commendations." *Id.* at 2–3.  Plaintiffs argue that such evidence would be improper

3    propensity evidence under Federal Rule of Evidence 404(a)(1) if used to show how the Officers

4    likely behaved at the time of the events that form the basis for this lawsuit.  *Id.*

5           In their Qualified Non-Opposition, Defendants accept that character evidence is generally

6    inadmissible in civil rights cases.  *See* Dkt. No. 188, Qual. Non-Opp. to Plfs.' MIL No. 3 at 2.  As

7    a result, Defendants do not oppose Plaintiffs' motion "to the extent that it seeks to exclude

8    evidence of officers' character or reputation within the SJPD and wider community and evidence

9    pertaining to officers' reputation and/or disposition for honesty, temperance, or peacefulness."  *Id.*

10   However, Defendants oppose Plaintiffs' motion to the extent that "Plaintiffs seek[] to exclude

11   evidence admissible for purposes 'such as proof of ***motive***, opportunity, ***intent***, preparation, plan,

12   knowledge, identity, or absence of mistake or accident" under Federal Rule of Evidence 404(b).

13   *Id.* (emphasis in original).  Defendants argue that it is "material to the [their] defense . . . to be able

14   to present circumstantial evidence demonstrating the reason(s) that the accused action was taken

15   (or not)."  *Id.*  Thus, Defendants argue that they "should be allowed to affirmatively negate and

16   present any circumstantial evidence that they had [a] specific intent or a retaliatory motive," or, at

17   a minimum, show that "their actions . . . during the same day or shift with respect to *other*

18   protestors and similar situations [] negate a 'bad mind.'"  *Id.* at 3.

19          The Parties are correct that "[c]haracter evidence is [] not admissible in a civil rights case,"

20   *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993), when offered to "prove that on a particular

21   occasion the person acted in accordance with the character or trait," Fed. R. Evid. 404(a)(1).

22   However, evidence of "[c]rimes, [w]rongs, or [a]cts" may be "admissible for another purpose,

23   such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of

24   mistake, or lack of accident."  Fed. R. Evid. 404(b)(2); *cf. Gates*, 993 F.2d at 700 (indicating that

25   it was improper to permit the defendant officer "to testify that in his sixteen and one-half years as

26   a police officer, he had not shot anyone," because "by [his] own admission, intent was not an

27   issue").

28          Based on their arguments in the motion, Plaintiffs' request is to exclude character evidence

United States District Court
Northern District of California

1     introduced for improper propensity purposes under Federal Rule of Evidence 404(a)(1).  However,

2     Plaintiffs appear to assert that "certifications and conduct as [] police officer[s]" are excludable on

3     this basis.  Plfs.' MIL No. 3 at 2.  For clarity, the Court notes that evidence of officer certifications

4     or conduct is not *necessarily* improper character evidence, since, for example, certifications might

5     instead provide evidence of the defendant officers' training or background.

6          The Court GRANTS the motion *in limine* insofar as it seeks to exclude pure character

7     evidence offered to show that the defendant officers acted in accordance with a particular

8     character trait on the days at issue.  Plaintiffs may object at trial to specific evidence that they

9     believe Defendants are seeking to admit for improper propensity purposes, at which point the

10    Court will consider whether the evidence is being offered for a permissible purpose under Federal

11    Rule of Evidence 404(b), such as to prove motive or intent.

12    **II.    DEFENDANTS' MOTIONS *IN LIMINE***

13    **A.  Defendants' Motion *in Limine* No. 1 to Exclude Evidence of Dismissed Defendants
14        and Claims**

15         In their first motion *in limine*, Defendants seek an order excluding "all references,

16    arguments, and evidence of the following":

17         1. All acts, omissions, and conduct of Chief Edgardo Garcia arising from the allegations in
          the Third Amended Complaint (ECF No. 83) or from those facts determined in the Court's
18        order on summary judgment (ECF No. 122);

19         2. All acts, omissions, and conduct of Jared Yuen arising from the allegations in the Third
          Amended Complaint (ECF No. 83) or from those facts determined in the Court's order on
          summary judgment (ECF No. 122);

20         3. All acts, omissions, and conduct of Captain Jason Dwyer arising from the allegations in
21        the Third Amended Complaint (ECF No. 83), from those facts determined in the Court's
          order on summary judgment (ECF No. 122), and from those facts found in the Ninth
22        Circuit's opinion (ECF No. 133); and

23         4. All acts, omissions, and conduct of Jared Yuen, Lee Tassio, Ronnie Lopez, Steven
          Gaona, Jonathan Marshall, Aiden Guy, Tyler Moran, Baasil Khan, [Jonathan] Byers, and
24        Brian Matchett that relate to plaintiff Shante Thomas's dismissed claims (ECF No. 83 at ¶¶
          125–136).

25         Dkt. No. 165, Defts.' MIL No. 1 at 1.  Defendants argue that "[e]vidence related to claims

26    dismissed at summary judgment has become irrelevant."  *Id.* at 2 (citing *K.J.P.*, 621 F. Supp. 3d at

27    1132, and *Van v. Language Line Servs., Inc.*, No. 14-cv-3791, 2016 WL 3566980, at *5 (N.D. Cal.

28    June 30, 2016)).  In particular, Defendants argue that "the City cannot be held vicariously liable

United States District Court
Northern District of California

1    for the conduct of" Officer Yuen, Chief Garcia, and Captain Dwyer, since each has now been

2    dismissed from the case. *Id.* at 3. Moreover, they argue that the "weight of authority . . . [holds]

3    that there is no supervisory liability for Bane Act claims," so any evidence of supervisory conduct

4    of Chief Garcia or Captain Dwyer is not relevant. *Id.* at 5 (quoting *Est. of Chivrell v. City of*

5    *Arcata*, 694 F. Supp. 3d 1218, 1232 (N.D. Cal. 2023)).

6          Plaintiffs "do not oppose Defendants' motion in limine number 1 and do not intend to

7    allege wrongdoing against the former defendants or discuss the dismissed claims." Dkt. No. 189,

8    Opp. to Defts.' MIL No. 1 at 2. The Court therefore GRANTS Defendants' unopposed Motion *in*

9    *Limine* No. 1.

10         **B. Defendants' Motion *in Limine* No. 2 to Exclude Evidence of Unidentified Officers**
            **or Employees**

11

12         In their second motion *in limine*, Defendants seek an order excluding all references,

13   arguments, and evidence of "[a]ll acts, omissions, and conduct of officers, employees, or agents of

14   the City of San José who were not named or specifically identified in the Third Amended

15   Complaint." Dkt. No. 166, Defts.' MIL No. 2 at 1. Defendants argue that Plaintiffs Cayla

16   Sanderlin, Breanna Contreras, Pietro di Donato, Adira Sharkey, and Joseph Stukes bring vicarious

17   Bane Act claims against the City of San Jose, yet each of these Plaintiffs is unable to identify any

18   particular officer who harmed them. *Id.* at 2. Defendants say that "[a]ssigning any malice to

19   unidentified employees of the City . . . demands improper speculation" and prejudices the City's

20   defense by depriving it of "any meaningful opportunity to present evidence regarding the totality

21   of the circumstances as known to the actor" or any available affirmative defenses. *Id.* at 3.

22   Defendants also argue that Plaintiffs should be precluded from amending their complaint at this

23   late stage in order to identify or join new defendants. *Id.* at 4–5.

24         Plaintiffs respond that "a reasonable jury could use direct and circumstantial evidence to

25   conclude by a preponderance of the evidence that it was a San Jose police officer who fired a

26   projectile that hit each group [plaintiff]" and that "[v]icarious liability applies whether or not the

27   employee is a defendant or even identified by name." Dkt. No. 190, Opp. to Defts.' MIL No. 2 at

28   2. Moreover, Plaintiffs argue that any San Jose Police Department officers on site at the protests

United States District Court
Northern District of California

1    were "integral participants under *Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004)," and that

2    "a municipality may be liable even if liability cannot be ascribed to a single individual officer."

3    *Id.* at 3 (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1186 n.7 (9th Cir. 2002)).

4          Under California law, "[a] public entity is liable for injury proximately caused by an act or

5    omission of an employee of the public entity within the scope of his employment if the act or

6    omission would, apart from this section, have given rise to a cause of action against that

7    employee."  Cal. Gov't Code § 815.2(a).  Contrary to Defendants' arguments, however, the

8    legislative comments accompanying this provision indicate that "it will not be necessary in every

9    case to identify the particular employee upon whose act the liability of the public entity is to be

10   predicated."  *Id.*, Leg. Comm. Comments—Senate.  "All that will be necessary will be to show

11   that some employee of the public entity tortiously inflicted the injury in the scope of his

12   employment under circumstances where he would be personally liable."  *Id.*; *accord Becerra v.*

13   *Cnty. of Santa Cruz*, 68 Cal. App. 4th 1450, 1462 n.5 (1998) ("Identification of a specific

14   employee tortfeasor is not essential to County liability under section 815.2.").

15         Thus, the Court understands the statement in Defendants' case *Koussaya v. City of*

16   *Stockton*, 54 Cal. App. 5th 909 (2020)—that "in order for vicarious public entity liability attach, a

17   public employee, either named as a defendant or at least 'specifically identified' by the plaintiff,

18   must have engaged in an act or omission giving rise to that employee's tort liability," *id.* at 944

19   (quoting *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1113 (2004))—to mean what the

20   legislative comment suggests: a plaintiff must be able to "show that some employee of the public

21   entity tortiously inflicted the injury in the scope of his employment under circumstances where he

22   would be personally liable," Cal. Gov't Code § 815.2(a), Leg. Comm. Comments—Senate,

23   although he need not ultimately prove who, exactly, that employee was.  *See Perez v. City of*

24   *Huntington Park*, 7 Cal. App. 4th 817, 820 (1992) ("The plaintiff may be unable to identify which

25   employee committed the wrongful act, but this is not fatal to the employer's liability, if the

26   evidence establishes that some employee in the scope of employment committed the wrongful

27   act."); *Zelaya v. Cnty. of Los Angeles*, 628 F. App'x 535, 537 (9th Cir. 2016) ("Plaintiff is not

28   required to identify his attackers by name in order to establish vicarious liability against the

United States District Court
Northern District of California

1    County." (citing *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 872 (2012);

2    *Perez*, 7 Cal. App. 4th at 820–22)).

3          For that reason, the Court concludes that Defendants' requested exclusion is too broad.

4    Plaintiffs were not required to join or specifically identify by name the City employees or agents

5    on whose conduct liability is predicated, and liability for unconstitutional conduct can *potentially*

6    be based on a theory of "integral participation." *See Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir.

7    2022) ("We have not previously 'define[d] the minimum level of involvement for liability under

8    the integral-participant doctrine,' but our precedents have permitted liability in two situations."

9    (citation omitted)).  That said, "a plaintiff c[an] not hold an officer liable because of his

10    membership in a group without a showing of individual participation in the unlawful conduct."

11    *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294

12    (9th Cir. 1996)).  Likewise, "mere speculation that defendants acted out of retaliation is not

13    sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

14          In light of the foregoing analysis, the Court DENIES Defendants' Motion *in Limine* No. 2.

15    The City has long been a defendant in this action, and it may be held vicariously liable for an

16    injury tortiously inflicted by an employee acting in the scope of his employment under

17    circumstances where he would be personally liable *even if* a plaintiff is not able to specifically

18    identify that employee by name.  However, as will be discussed in further detail in the analysis

19    regarding Defendants' Motion *in Limine* No. 4, *infra*, Plaintiffs *may not* speculate as to any facts,

20    including from which source a projectile originated or why a plaintiff was struck with a projectile.

21        **C. Defendants' Motion *in Limine* No. 3 to Exclude Opinions and Testimony of Dr.**
22            **Edward Maguire, Plaintiffs' Police Practices Expert**

23          In their third motion *in limine*, Defendants seek an order excluding "[a]ll opinions,

24    contents, assumptions, and factual bases" in the expert report of Plaintiffs' expert Dr. Edward

25    Maguire, PhD, "[a]ll opinions on the use of force against and the causes of injuries of plaintiffs

26    Derrick Sanderlin, Cayla Sanderlin, Breanna Contreras, Pietro di Donato, Adira Sharkey, Vera

27    Clanton, and Joseph Stukes," and "[a]ll evidence or facts, and their substance, in connection with

28    Plaintiffs' injuries or the circumstances of their injuries."  Dkt. No. 167, Defts.' MIL No. 3.

United States District Court
Northern District of California

1    Defendants argue that, because all *Monell* claims were resolved in favor of the City on

2  summary judgment, Dr. Maguire "should be prohibited from testifying on *Monell*-like opinions."

3  *Id.* at 1.  For example, Dr. Maguire offers several opinions regarding whether the San Jose Police

4  Department's practices, policies, training, or response to the George Floyd protests fell below

5  generally accepted standards for police practices.  *See id.* at 1–2.  Defendants argue that such

6  opinions "impose[] a standard, by expert fiat, that does not exist" and that "[d]epartment-wide

7  evidence has limited, if any, value for an individual officer's use of force."  *Id.* at 3.  Further,

8  because Dr. Maguire has expressed that he does not have an opinion on other Plaintiffs' injuries,

9  Defendants argue that Dr. Maguire has only a single admissible opinion: "whether Panighetti's use

10  of force against Derrick Sanderlin was within SJPD policy on the <u>assumption</u> that the groin was

11  targeted."  *Id.* at 4 (emphasis in original).  However, Defendants challenge the "two sub-opinions"

12  encapsulated in this opinion—"that lethal force would not have been warranted and that Panighetti

13  intentionally targeted this area"—saying that Dr. Maguire does not substantiate the basis for these

14  opinions, and that therefore Dr. Maguire's testimony related to Mr. Sanderlin should be excluded.

15  *Id.* at 5.

16    In opposition, Plaintiffs argue that Dr. Maguire's report "may aid the jury to determine a

17  fact in this case"—specifically, whether Officer Panighetti's use of the 40mm launcher "was a

18  high level of force, including potentially lethal force."  Dkt. No. 191, Opp. to Defts.' MIL No. 3 at

19  2.  Plaintiffs also argue that "Defendants put at issue . . . the question of what other alternative

20  means could have been used to disburse the crowd, short of projectile impact weapons."  *Id.*

21    Plaintiffs initially presented Dr. Maguire to provide expert testimony in support of

22  Plaintiffs' *Monell* claims.  *See* Dkt. No. 113 at 18–19.  Now that those *Monell* claims have been

23  dismissed, Defendants argue that Dr. Maguire's opinions are "irrelevant, prejudicial, improper

24  character evidence, confusing, speculative, and time-consuming."  Defts.' MIL No. 3, Notice of

25  Motion.  In other words, Defendants make their motion *in limine* pursuant to Federal Rules of

26  Evidence 401, 403, and 404.  Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to

27  make a fact more or less probable than it would be without the evidence; and (b) the fact is of

28  consequence in determining the action."  Fed. R. Evid. 401.  Under Rule 403, evidence may be

12

1    excluded if "its probative value is substantially outweighed by a danger of one or more of the

2    following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time,

3    or needlessly presenting cumulative evidence." Fed. R. Evid. 403. And under Rule 404,

4    "[e]vidence of a person's character or character trait is not admissible to prove that on a particular

5    occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1).

6         Given that the *Monell* claims are no longer live and any remaining City liability must be

7    based upon vicarious liability for the wrongful conduct of an individual City employee or agent,

8    the Court agrees with Defendants that Dr. Maguire's testimony, which was specifically targeted to

9    Plaintiffs' *Monell* claims, is largely irrelevant. This conclusion is bolstered by the fact that

10   Plaintiffs struggled at the hearing on this motion *in limine* to identify which specific portions of

11   Dr. Maguire's report remain relevant to Plaintiffs' remaining claims. Moreover, the Court finds

12   that the potential probative value of any testimony from Dr. Maguire as to whether the San Jose

13   Police Department's practices, policies, or response to the protests adhered to "nationally accepted

14   police standards and practices" that are not imposed upon SJPD's officers would be substantially

15   outweighed by the risk of confusing the issues or misleading the jury. Indeed, it seems highly

16   likely that much time would be unnecessarily expended in trying to explain to the jury what

17   limited use they could make of any testimony from Dr. Maguire, so as to ensure that they would

18   not inadvertently "attribute the collective failings of the SJPD to any individual officer" or hold an

19   individual officer constitutionally liable for the conduct of others without a sufficient showing of

20   that officer's individual involvement. *See* Defts.' MIL No. 3 at 3. And based upon certain quotes

21   highlighted by Plaintiffs in their opposition brief, the Court is further concerned that Dr.

22   Maguire's testimony might run afoul of the usual rules against offering speculation and/or legal

23   conclusions. *See United States v. Holguin*, 51 F.4th 841, 865 (9th Cir. 2022) ("Under Rule 701, a

24   witness may not testify based on speculation." (quoting *United States v. Perez*, 962 F.3d 420, 435

25   (9th Cir. 2020)) (internal quotations omitted)); *Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044,

26   1059 (9th Cir. 2024) (stating that expert may not "attempt to instruct the jury on the law, or how to

27   apply the law to the facts of the case" (quoting *United States v. Diaz*, 876 F.3d 1194, 1199 (9th

28   Cir. 2017))).

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1    Because Plaintiffs' counsel was unable to identify specifically which opinions from Dr.

2   Maguire remain relevant now that there are no surviving *Monell* claims, and whether that

3   testimony falls within the boundaries of Dr. Maguire's expertise as disclosed to Defendants, the

4   Court GRANTS Defendants' Motion *in Limine* No. 3.  Dr. Maguire's testimony shall be excluded.

5   However, the Court will permit Plaintiffs to submit a brief identifying the specific portions of Dr.

6   Maguire's report that remain relevant *and* fall within the area(s) of expertise listed on Dr.

7   Maguire's expert disclosure on or before April 25, 2025.  If Plaintiffs submit such a supplemental

8   brief, Defendants may file a response, and the Court will revisit this ruling to determine whether

9   any appropriately limited testimony from Dr. Maguire may be admitted.

### D. Defendants' Motion *in Limine* No. 4 to Exclude Testimony and Argument of Certain Plaintiffs

In their fourth motion *in limine*, Defendants seek an order excluding:

1. From Breanna Contreras, all testimony, opinion, belief, or argument that any SJPD officer employee targeted or aimed at her; the inference or belief that the projectile that struck her originated from unidentified officers; on the type of projectile; and the state of mind of any officer; and
2. From Pietro di Donato, Joseph Stukes, and Adira S[h]arkey, all testimony, opinion, belief, or argument that any SJPD officer employee targeted or aimed at them; the inference or belief that the projectile that struck them originated from unidentified officers; on the type of projectile; and the state of mind of any officer.

18  Dkt. No. 168, Defts.' MIL No. 4.  Defendants argue that "Breanna Contreras testified twice . . .

19  that she does not know who or what injured her at the protests on May 29, 202[0]."  *Id.* at 1.

20  Accordingly, Defendants say that she "should be prohibited from testifying that she was struck by

21  a projectile originating *from* an SJPD officer, an ultimate inference of fact," and should instead be

22  limited to testifying about "what she perceived or witnessed."  *Id.* at 2 (emphasis in original).

23  Similarly, Defendants argue that Plaintiffs di Donato, Stukes, and Sharkey each do not know

24  which officer, if any, shot the projectile that struck them, and thus should be limited to testifying

25  about "their perceptions of the events or injuries, but precluded from arguing, testifying, or

26  suggesting that any officer fired, aimed at, or targeted them (e.g., versus being struck with a

27  projectile from the direction of the police)."  *Id.* at 3–4.

28    Plaintiffs' brief does not directly address the arguments presented in Defendants' motion *in*

1   *limine*.  Rather, Plaintiffs offer various principles of law related their theory of the case, without

2   specifically arguing that each Plaintiff should be able to offer the testimony that Defendants seek

3   to exclude.  For example, Plaintiffs respond that "the specific intent required for Bane Act

4   [liability] is 'reckless disregard[,]' which can be shown by circumstantial evidence."  Dkt. No.

5   192, Opp. to Defts.' MIL No. 4 at 2.  Therefore, Plaintiffs say, they "do not need to prove any

6   officer[']s subjective intent."  *Id.*  Plaintiffs also reiterate their argument that Plaintiffs need not

7   specifically identify by name which officer injured a given plaintiff in order for vicarious liability

8   to attach.  *Id.* at 2–4.

9           As previously discussed, *see supra* section II.B, Plaintiffs are not required to identify the

10  officers upon whose conduct City liability is based *by name* in order to establish vicarious liability

11  against the City.  *See Zelaya*, 628 F. App'x at 537.  And it is also true that Bane Act "specific

12  intent" may be established by showing that the actor proceeded in "[r]eckless disregard of the

13  'right at issue.'"  *Cornell*, 17 Cal. App. 5th at 803–04.  However, these points are disconnected

14  from Defendants' motion.

15          Defendants' motion, at base, concerns the matter of speculative testimony.  Under Federal

16  Rule of Evidence 701, opinion testimony by lay witnesses is "testimony in the form of an opinion

17  . . . that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the

18  witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or

19  other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  "Under Rule 701,

20  a witness *may not* testify based on speculation."  *Holguin*, 51 F.4th at 865 (emphasis added)

21  (quoting *Perez*, 962 F.3d at 435) (internal alterations omitted); *see Karam v. City of Burbank*, 352

22  F.3d 1188, 1194 (9th Cir. 2003) ("Karam's speculation as to Miranda's improper motive does not

23  rise to the level of evidence sufficient to survive summary judgment.").

24          Thus understood, Defendants' Motion *in Limine* No. 4 is GRANTED.  Plaintiffs may

25  testify based on their own perceptions—such as what they personally saw and/or heard—but they

26  may not *speculate* as to what item struck them, from where it originated, or any intent or animus

27  on the part of a City employee accused of interfering with their rights.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.    CLARIFICATION REGARDING CAYLA SANDERLIN'S CLAIMS AT TRIAL**

Leading up to the final pretrial conference, the Parties informed the Court of their dispute over whether Plaintiff Cayla Sanderlin has a surviving Bane Act claim.  She does not.  At summary judgment, the Court determined that Ms. Sanderlin was not seized, and that she failed to show a genuine dispute of material fact as to whether there was an unreasonable use of force against her.  Dkt. No. 122 at 16–17.  Accordingly, summary judgment was resolved against her on her Fourth Amendment claim, so she does not have a surviving Bane Act claim based on an alleged Fourth Amendment violation.  Moreover, the Parties' Joint Pretrial Conference Statement states that all of the Bane Act claims are based upon alleged underlying Fourth Amendment violations.  Dkt. No. 204 at 5–6.  This statement of the remaining claims became binding upon the Parties in governing the course at trial when Court issued its order on the Joint Pretrial Conference Statement on April 16, 2025.  *See id.*  Thus, because Ms. Sanderlin's Fourth Amendment claim had already been rejected, she does not have a Bane Act claim to present at trial.

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Plaintiffs' Motion *in Limine* No. 1 is DENIED.  However, the audio accompanying SJ405878 and SJ003741 will be excluded.

2.  Plaintiffs' Motion *in Limine* No. 2 is DENIED.

3.  Plaintiffs' Motion *in Limine* No. 3 is GRANTED as to character evidence offered for propensity purposes.  The Court DEFERS ruling on whether specific challenged evidence is admissible under Rule 404(b).

4.  Defendants' Motion *in Limine* No. 1 is GRANTED.

5.  Defendants' Motion *in Limine* No. 2 is DENIED.

6.  Defendants' Motion *in Limine* No. 3 is GRANTED.  If Plaintiffs submit a brief identifying the specific portions of Dr. Maguire's report that remain relevant *and* fall within the area(s) of expertise listed on Dr. Maguire's expert disclosure by April 25, 2025, the Court will revisit this ruling once Defendants have had an opportunity to respond.

7.  Defendants' Motion *in Limine* No. 4 is GRANTED.

8.  Plaintiff Cayla Sanderlin does not have a surviving Bane Act claim.

**IT IS SO ORDERED.**

Dated:  April 23, 2025

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California